United States District Court
Southern District of Texas
**ENTERED**
March 20, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Amber Baquer, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:22-cv-02183 |
| Martin O'Malley, Commissioner of Social Security Administration,[1] | § § § § | |
| *Defendant.* | § § § | |

## <u>MEMORANDUM AND ORDER</u>

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon consent of the parties. Dkt. 11, 17. After carefully considering the parties' briefs, Dkt. 12, 15, the administrative record, Dkt. 7, and the applicable law, the Court grants Defendant Martin O'Malley's motion for summary judgment (Dkt. 14) and denies Plaintiff Amber Baquer's motion for summary judgment (Dkt. 12).

---

[1] Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023. Because Defendant's motion for summary judgment uses O'Malley's name, the Court grants Defendant's implied request to substitute him for Kilolo Kijakazi as Defendant in this case.

## Background

For fifteen years, Baquer worked in various positions as a retail sales associate, waitress, hostess, childcare provider, administrative sales assistant, and leasing consultant.  *See* R.44, 74, 196, 230.  In her last job, Baquer served as an assistant manager at a fitness studio, but she stopped due to the onset of the COVID-19 pandemic.  R.194.  On October 16, 2020, Baquer suffered a series of tonic-clonic seizures.  R.24, 402.  She has not worked since.  R.35.

According to Baquer, she suffers from seizures, trauma, post-traumatic stress disorder ("PTSD"), depression, anxiety, attention deficit disorder, attention deficit hyperactive disorder ("ADHD"), developmental trauma, severe migraines, confusion, and short-term memory loss.  R.194, 272.  To date, Baquer has been diagnosed with the following physical medical conditions: ADHD, right upper extremity apraxia, epilepsy, congenital malformation of the brain, chronic migraines, mood disorder, insomnia, seizure disorder, and PTSD.  R.62-63, 343, 371, 404, 441, 465, 559.

Baquer filed for social security benefits under Title II of the Social Security Act, claiming a disability onset date of October 16, 2020.  R.19, 191, 194.  After her claim was denied, Baquer requested and obtained a hearing before an administrative law judge ("ALJ").  *See* R.133.

At the hearing, Baquer testified that all the problems she experiences stem from past severe trauma she experienced as a child at the age of four.  *See*

R.42.   She has difficulty sleeping and suffers weekly migraine headaches. R.40-41.   She described having social anxiety, balance issues, problems with her right arm, facial rashes from anti-seizure medication, trouble maintaining attention and concentration, memory issues, and experiencing seizures once every three to six months since October 2020.   R.41-47.

The ALJ found that Baquer met the insured status requirements and had not engaged in substantial gainful activity since October 16, 2020—the date of Baquer's first seizure.   R.22.   The ALJ also concluded that Baquer has several severe physical impairments: epilepsy, neurodevelopmental disorder, migraine headaches, and occasional marijuana use.   *Id*.

After finding that Baquer's impairments do not meet or medically equal a listed impairment, the ALJ turned to formulating Baquer's residual functional capacity ("RFC").   In addition to detailing relevant medical records, the ALJ evaluated the persuasiveness of numerous medical opinions regarding Baquer's mental impairments.   *See* R.24-26.   Based on those determinations, the ALJ concluded that Baquer can perform "light work," subject to the following limitations:

> [Baquer] can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; occasionally climb ramps or stairs but never ropes, ladders, or scaffolds; no work at unprotected heights or around dangerous machinery; no driving; no work in loud working environments, such as machine shops or sports events; frequent but not continual handling and fingering with the right upper extremity (claimant is left hand dominant); can understand,

3

remember, and carry out simple instructions with 1- to 3- step tasks that are routine and repetitive without frequent changes in duties; no forced pace or assembly line work and no contact with the public and occasional contact with coworkers and supervisors.

R.23.  Based on this RFC, the ALJ found that Baquer cannot perform any past relevant work but could work in other positions that exist in significant numbers in the national economy—namely as a housekeeper, price tag ticker, and routing clerk.  R.26-27.  As a result, the ALJ determined that Baquer does not qualify as disabled under the Social Security Act.  R.27.

Baquer appealed the ALJ's determination to the Social Security Appeals Council, which denied review.  R.1.  This appeal followed.  Dkt. 1.

## **Legal Standard**

This Court reviews the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a scintilla, but it need not be a preponderance."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotation marks omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I.   Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the

claimant's RFC, which is used to evaluate steps four and five.  *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden of proof at the first four steps.  *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).  At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform."  *Id.* at 753-54.  The Commissioner fulfills this burden by identifying potential alternative employment that exists in significant numbers in the national economy.  *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The burden then "shifts back to the claimant to prove that he is unable to perform the alternate work."  *Fraga*, 810 F.2d at 1302.

## II.  <u>The ALJ properly recognized Baquer's ADHD as a severe and medically determinable impairment.</u>

Baquer mounts a single challenge at step two, asserting that the ALJ failed to classify her ADHD as a severe impairment.  Dkt. 12 at 7.  But the ALJ appears to have found Baquer's ADHD to be a severe impairment, albeit under the broader heading as a "*neurodevelopmental disorder*."  R.22.  The use of a different label is inconsequential, as the ALJ's ensuing analysis regarding the

RFC prioritizes functional restrictions resulting from the impairment rather than the terminology associated with it. *See Knight v. Kijakazi*, 2023 WL 234769, at *2 (5th Cir. Jan. 18, 2023) (failure to list severe impairment was harmless error where ALJ recognized it as component of another and addressed it in the RFC); *Rodriguez v. Kijakazi*, 2023 WL 5808388, at *7 (W.D. Tex. Aug. 22, 2023) (ALJ's use of one term subsumed another condition "as a component thereof"), *adopted by*, 2023 WL 5814389 (W.D. Tex. Sept. 7, 2023).

Here, the RFC parallels accommodations recommended when Baquer was first diagnosed with ADHD, thereby indicating that the ALJ properly considered the combined impact of all of Baquer's conditions. *Compare* R.371-72 (requiring "short, clear, direct, and consistent instructions" and "additional allotted time"), *with* R.23 (RFC limiting Baquer to "simple instructions with 1- to 3- step tasks" and "no forced pace or assembly line work"); *see also infra* Part III. Notably, too, Baquer's ADHD was under control while she was on medication. *See* R.354, 568, 573, 574, 575, 576, 578 (medication from 2003 through 2009); R.320, 329 (December 2007, exceeded goals and successful in school without accommodations); R.559 (last documented visit with pediatrician in March 2012 (age 21); resumed ADHD medication after two year hiatus; recounting Baquer's assertion that "she needs to have her meds ... to focus and concentrate at work").

7

But Baquer stopped taking the medication, despite its prior effectiveness.  R.24 (citing R.402).  An impairment that "reasonably can be remedied or controlled by medication ... cannot serve as a basis for a finding of disability."  *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930).  Baquer's discontinuation of her medication reinforces the conclusion that the ALJ did not reversibly err even assuming that he failed to consider her ADHD.

## III.   <u>Substantial evidence supports the ALJ's formulation of the RFC.</u>

Baquer contends that the RFC failed to accommodate her need for reminders and additional breaks during the workday.  Dkt. 12 at 5.  Baquer argues that these limitations are supported by medical evidence detailing daily bouts of confusion from her recent onset epilepsy, side effects from her anti-seizure medication, and her ADHD diagnosis.  *Id.* at 6-7.

On the other hand, the Commissioner disputes that objective evidence supports such limitations.  Dkt. 15 at 10.  Based on the record, the Commissioner maintains, and the Court agrees, that the RFC adequately accounts for all of Baquer's restrictions and impairments.  *Id.*  at 11.

### A.   **Medical evidence does not indicate that Baquer needs breaks or reminders to stay on task.**

An RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).  "The ALJ is responsible for determining an

applicant's residual functional capacity." *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2). To formulate the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545(a)(1). But the ALJ need not incorporate limitations in the RFC that he deems unsupported by the record. *See Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (internal quotation marks omitted).

Although Baquer claims that the RFC should have included time off task and reminders, she falls short of showing that the record supports such limitations. Baquer cites various medical reports reflecting "daily, brief episodes of confusion" and post-seizure confusion, as well as "memory lapses, speech arrest, and fatigue" caused by her medication. Dkt. 12 at 6. Yet this evidence consists primarily of self-reported assertions contained in various medical records. *See* R.402, 432-33, 453, 477, 495, 584 (categorizing symptoms as "confusional episodes" under "subjective" findings; "[c]omplains of severe side effects"). Such "statements about … symptoms will not alone establish that [a claimant is] disabled." *See* 20 C.F.R. § 404.1529(a). Rather, the ALJ was required to consider Baquer's symptoms in light of objective medical evidence "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." *See id.* § 404.1529(c)(2).

As indicated by the ALJ, Baquer's "symptoms are not entirely consistent with the medical evidence." R.24. The ALJ noted that Baquer did not exhibit any neurological abnormalities. *See id.* In October 2020, after Baquer's first seizure, a physical examination found Baquer to be neurologically intact. *Id.* (citing R.403, 423, indicating that Baquer was oriented to time, person, place, and situation, was cooperative, and had clear speech). This same record reflects that Baquer's recent and remote memory were normal. R.402.

The ALJ also referenced treatment records from a subsequent hospital visit in December 2020, after Baquer had another seizure. R.24. Aside from Baquer's self-reported mild disorientation, the ALJ noted that her examination revealed no focal neurologic deficits. *Id.* (citing R.433). And although the ALJ was required to consider side effects of any medication taken to alleviate symptoms, *see* 20 C.F.R. § 404.1529(c)(3)(iv), the objective medical evidence did not "demonstrate the existence of a condition that could reasonably be expected to produce the … symptoms alleged." *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).

Other treatment records from neurologist Grzegorz Kurzydlo, M.D, in February through May 2021, support the ALJ's exclusion of any further limitations in the RFC. As the ALJ noted, Baquer had complained about side effects from her anti-seizure medication, such as headaches, mood swings, fatigue, memory lapses, concentration problems, speech arrest, and daily

confusional episodes.  R.24 (citing R.440, 458, 495).  Yet no objective evidence supports these symptoms.

At every visit, Dr. Kurzydlo indicated that Baquer was awake, aware, fully oriented, and cooperative, her speech was normal, and her affect was appropriate.  R.441, 459, 475, 549.  An EEG revealed no abnormalities.  R.453. Dr. Kurzydlo recommended an ambulatory EEG "to characterize [the] nature and frequency" of Baquer's "confusional episode[s]," R.489, 495, but it remains pending due to financial reasons and insurance denial.  R.272, 472, 474. Nevertheless, Dr. Kurzydlo limited any work-related restrictions to general seizure precautions that track both the recommendations of other medical providers and the restrictions ultimately included in the RFC.  *Compare* R.256 (December 2020 record with general seizure instructions to avoid operating machinery, driving, or climbing ladders), *and* R.475, 549 (April and May 2021 records; Dr. Kurzydlo recommending adherence to "universal seizure precautions"), *and* R.602 (November 2020 visit to Baylor College of Medicine Neurology, advising Baquer to avoid heights, use of heavy machinery, and driving), *with* R.23 (RFC stating that Baquer cannot climb ropes, ladders or scaffolds, work around dangerous machinery, or drive).

The foregoing records detailed by the ALJ provided a sufficient basis to reject Baquer's statements regarding the impact of her conditions on her ability to work.  Accordingly, the ALJ did not err by declining to include

Baquer's alleged need to be off-task, receive additional reminders, or take additional breaks, when formulating the RFC.

### B.     The ALJ properly evaluated the medical opinions.

Baquer further attacks the RFC by challenging the ALJ's decision not to evaluate the persuasiveness of Dr. Gina Evans's consultative mental status examination.  Dkt. 12 at 8.  Baquer also argues that no medical opinions support the RFC.  *Id.*  The Commissioner disputes that Dr. Evans's examination qualifies as a "medical opinion" that required a persuasiveness evaluation.  Dkt. 15 at 7-8.  In addition, the Commissioner asserts that the ALJ sufficiently evaluated the medical opinions of record and included more limitations in the RFC than what the state agency medical consultants recommended.  *Id.* at 9-10.  The Court addresses these contentions in turn.

1.     <u>Dr. Evans did not provide a medical opinion that required an evaluation for persuasiveness.</u>

The ALJ declined to evaluate the persuasiveness of certain findings by Dr. Evans, R.26, namely, that Baquer's "comorbidity symptoms impair her ability to function stably in her daily life activities; cognitively, physically, and emotionally," and that Baquer's memory was "poor," R.466.  Dr. Evans stated those findings under the heading "Prognosis."  R.466.

Contrary to Baquer's contention, Dr. Evans's "Prognosis" statement is not a medical opinion that requires a persuasiveness evaluation.

Persuasiveness determinations are limited to medical opinions.  *See* 20 C.F.R. § 404.1520c.  A medical opinion, in turn, is a statement about what a claimant "*can still do despite [her] impairment(s)* and whether [a claimant has] one or more impairment-related limitations or restrictions" in the abilities to perform the demands of working, as well as the ability to adapt to environmental conditions.  *See* 20 C.F.R. § 404.1513(a)(2) (emphasis added).

Contrast that with a prognosis, which does not qualify as a medical opinion.  *Id.* § 404.1513(a)(3); *see, e.g., Kevin L. v. Kijakazi*, 2022 WL 3328269, at *5 (S.D. Tex. July 27, 2022) (doctor's prognosis that claimant is "likely to be able to sustain and maintain daily life and occupational responsibilities" is not a medical opinion), *adopted by*, 2022 WL 3283741 (S.D. Tex. Aug. 11, 2022).  Nor are determinations that a claimant is "disabled or "unable to work," as those constitute legal conclusions "reserved to the Commissioner."  *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (quoting 20 C.F.R. § 404.1527(e)(1)); *see also, e.g., Thomas H. v. Kijakazi*, 2023 WL 2541713, at *6 (S.D. Tex. Mar. 16, 2023) (doctor's statement that claimant cannot "work[ ] any type of job due to his ... disability" was not a medical opinion).  And the ALJ need not evaluate the persuasiveness of findings that fail to satisfy the regulatory definition of a medical opinion.  *See Frank*, 326 F.3d at 620; *see also, e.g., Chelita, G. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 992745, at *4-5 (N.D.

Tex. Feb. 9, 2024) (same principle), *adopted by* 2024 WL 991587 (N.D. Tex. Mar. 6, 2024).

Here, Dr. Evans documented Baquer's alleged symptoms, diagnosis, and prognosis and made judgments about the nature and severity of Baquer's impairments.  R.463-65.  But Dr. Evans did not "opine on what [Baquer] can still do despite [her] impairment(s), *and* [her] physical or mental restrictions." *See Winston v. Berryhill*, 755 F. App'x 395, 402 (5th Cir. 2018) (internal quotations marks omitted) (emphasis added); *see also* 20 C.F.R. § 404.1513(a)(2) (medical opinion must specify what a claimant "can still do despite [her] impairment(s)").  "Rather the evaluation simply outlines [Dr. Evans's] diagnosis and observations" without "an expression of judgment regarding [Baquer's] capabilities and restrictions."  *See Winston*, 755 F. App'x at 402-03.  That omission eliminated any duty to evaluate Dr. Evans's findings for their persuasiveness.  *See id.* at 403 (rejecting contention that ALJ "violate[d] legal standards specific to medical opinions" when assessing a doctor's evaluation that did not qualify as a medical opinion); *see also Thomas H.*, 2023 WL 2541713, at *6.

Significantly, however, the ALJ properly considered Dr. Evan's findings as "other evidence" apart from medical opinions.  *See* 20 C.F.R. § 404.1513(a)(3).  The ALJ detailed Baquer's typical day and her dependence on others for some activities of daily life, including driving, cooking, bathing,

14

and grooming.   R.25 (citing R.463-66).   The ALJ recognized that Baquer reported cognitive and memory problems, as well as taking more time to complete tasks.   *Id.*   The ALJ also noted Dr. Evans's finding about Baquer's poor memory during the examination.   *Id.*   Notably, however, Dr. Evans had also observed that Baquer's "immediate memory" and concentration appeared "intact," but her "delayed memory was somewhat impaired."   R.465.

The ALJ then incorporated the limitations suggested in Dr. Evans's examination when formulating Baquer's RFC.   To account for Baquer's "somewhat impaired" delayed memory, *id.*, the ALJ limited her to understanding, remembering, and carrying out simple instructions with one-to-three-step routine and repetitive tasks without frequent changes in duties, R.23.   As for Baquer's need for more time to complete tasks, the ALJ ruled out assembly line work and restricted her to working with "no forced pace."   *Id.*   No further consideration of Dr. Evans's findings was required.

        2.    <u>The ALJ considered all the medical opinions and relevant evidence to formulate the RFC.</u>

Separately, Baquer contends that the ALJ lacked any medical opinions to support the RFC.   Dkt. 12 at 8.   According to Baquer, the ALJ failed to properly consider the opinions of state medical consultants who rated her as having "moderate" limitations in certain areas of mental function.   *Id.*

In response, the Commissioner maintains that the findings of those same medical consultants support the RFC, but the RFC itself imposes greater limitations than what the consultants recommended.  Dkt. 15 at 9-10.  The Commissioner further disputes Baquer's reliance on ratings that do not constitute the consultants' opinions about Baquer's mental RFC.  *Id.* at 9.

The ratings invoked by Baquer address a different issue than the RFC. They concern certain "Paragraph B" criteria used to assess the impact of a mental impairment on four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *See* R.22-23; R.69-73; R.94-97; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; *id.* § 404.1520a(c)(3). Consultants analyze those functional areas through a series of questions, recording their findings under "MRFC–Additional Explanation," R.69-73, 94-97; *see also* 20 C.F.R. § 404.1545(c) (procedure for assessing mental abilities).

The evaluations themselves make clear that "the consultant's ratings of specific limitations do not constitute the RFC assessment, which is recorded in the narrative discussion(s) only." *Barnett v. Kijakazi*, 2023 WL 2246399, at *6 (S.D. Tex. Feb. 27, 2023) (internal quotation marks omitted), *adopted by* 2023 WL 2564400 (S.D. Tex. Mar. 17, 2023); *see* R.69-70, 95.  "Rather than consider the state agency medical consultants' category findings, the Commissioner's Program Operations Manual System ("POMS") requires the

ALJ to solely consider the narratives written by the consultants in section III of their reports." *See Honaker v. Kijakazi*, 2023 WL 9503412, at *6 (S.D. Tex. June 12, 2023) (citing POMS § DI 25020.010(B)(1), 2001 WL 1933437).

As a result, the ALJ did not err by declining to rely on the consultants' Paragraph B findings, which are separate and distinct from their opinions regarding Baquer's RFC.[2]   In the operative narrative, the consultants concluded that Baquer "is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact appropriately with others, and respond to changes in a work setting." R.73; R.97.  And based on Baquer's entire record—including relevant findings by Dr. Evans, *see supra* Part III.B.1—the ALJ declined to adopt the consultants' RFC opinions wholesale, choosing instead to impose some greater restrictions in the RFC.  *See* R.23 (limiting Baquer to simple,

---

[2] Notably, the ALJ's findings on the Paragraph B criteria were more favorable to Baquer than the consultants on whose findings she relies.  Whereas the consultants found moderate limitations in only two functional areas, *see* R.64, 73, 88, 97, the ALJ found comparable limitations in all four areas, *see* R.22-23.  Under Baquer's mistaken position, adopting the consultants' findings on Paragraph B criteria could only have led to a *less* restrictive RFC.

But as a legal matter, even an ALJ's *own* findings on Paragraph B criteria do not dictate what goes into the RFC.  Findings on Paragraph B criteria "are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Such findings, while relevant, "do not require the use of any particular language" when formulating the RFC.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019); *see also, e.g.*, *Elizondo v. Kijakazi*, 2023 WL 3214598, at *4 (W.D. Tex. May 1, 2023), *adopted by* 2023 WL 3514460 (W.D. Tex. May 17, 2023).  These principles further negate Baquer's claims of error.

routine, and repetitive tasks, with no contact with the public and only occasional contact with coworkers and supervisors, and no "forced pace or assembly line work"). There was no error here.

## IV. **The ALJ did not err when posing hypotheticals to the VE that tracked limitations ultimately adopted in the RFC.**

The foregoing conclusions defeat Baquer's interrelated challenges at steps four and five of the disability inquiry. According to Baquer, the ALJ's hypothetical question to the VE regarding the jobs that Baquer could perform was flawed because it did not incorporate all of Baquer's limitations. Dkt. 12 at 9-11. This contention presupposes that Baquer's memory, attention, and concentration impairments were greater than what the ALJ concluded.

As explained above, however, the ALJ had a sufficient basis to conclude that Baquer could work on a sustained basis under the RFC provided. *See supra* Part III. And the ALJ's questions to the VE tracked that conclusion. *See* R.50-53. Baquer therefore cannot show the ALJ erred by adopting the VE's testimony that Baquer's limitations do not foreclose her from working as a housekeeper, price tag ticker, and routing clerk. *See* R.27; *see also* R.53 (VE's testimony); *Lafleur v. Colvin*, 540 F. App'x 263, 267 (5th Cir. 2013) (per curiam) (no error in hypothetical question because its underlying RFC findings were supported by substantial evidence). The ALJ's denial of benefits is affirmed.

## <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** Plaintiff Amber Baquer's Motion for Summary Judgment (Dkt. 12) and **GRANTS** Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 14).  It is further **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on March 20, 2024, at Houston, Texas.

_____

Yvonne Y. Ho
United States Magistrate Judge